


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAHMEEK BOYD,

                Plaintiff,

   -against-

THE CITY OF NEW YORK; New York City Police ("NYPD") Officer TELLY WARING, Shield #20352; NYPD Officer JAYSEN BASNIGHT, Shield # 29694; NYPD Officers JOHN DOE # 1-10.

                Defendants.

Case No:

COMPLAINT AND JURY TRIAL DEMAND

## PRELIMINARY STATEMENT

1.    This suit arises from the repeated harassment, false detention and imprisonment, malicious prosecution, and illegal searches of Plaintiff Jahmeek Boyd.

2.    In one incident, Mr. Boyd spent nearly three weeks in jail, facing charges for a crime that the arresting and complaining officers knew that he had not committed, because of false information sworn to by those officers.

3.    Even before those false charges were dismissed, in a second incident, Mr. Boyd was again arrested without cause and this time was subjected to an invasive, humiliating, and baseless strip search in an unsecured area of the 32nd Precinct.

2.    At the time of the first incident, Mr. Boyd was 18 years old. He had never been convicted of a crime.

3.    On the afternoon of October 3, 2012, Mr. Boyd, along with three other individuals (collectively, "the guests"), visited the home of their friend Devon Richards at 2855 8th Avenue, New York, New York. Mr. Boyd and the three other

guests entered the building and knocked on the door of Mr. Richards's apartment. When they received no answer, they turned to leave the building.

4. As the four guests were leaving the building, several police officers, including Police Officer Telly Waring, entered. The officers asked Mr. Boyd and the other guests whether they lived in the building. They responded that they did not but that they were visiting a friend who did.

5. Without explanation, the officers ordered Mr. Boyd and his companions up against a wall. Mr. Boyd was searched and handcuffed. The other three guests were also searched and placed under arrest.

6. While his guests were being placed under arrest, Mr. Richards entered the building. He told the police officers that Mr. Boyd and the other guests were his friends and that they had been visiting his apartment. The officers checked Mr. Richards's identification and confirmed that he was a tenant of the building.

7. Despite knowing that Mr. Boyd and the other three guests were in the building to visit a resident and that they therefore were not trespassing, the police officers continued with their arrest of all four guests.

8. The officers transported Mr. Boyd and the other three guests to the 32nd Precinct. Mr. Boyd spent the night in custody.

9. On the following day, October 4, 2012, Police Officer Telly Waring swore out a criminal complaint against Mr. Boyd in New York County Criminal Court, charging Mr. Boyd with Criminal Trespass in the Third Degree.

10. Police Officer Waring included in the criminal complaint material facts that he knew to be false in order to establish the appearance of probable cause.

According to Police Officer Waring's false statements in the criminal complaint, Mr. Richards told the arresting officers that Mr. Boyd and the other guests *were not* at 2855 8th Avenue to visit him. In fact, Mr. Richards *had* told Police Officer Waring and the other arresting officers that Mr. Boyd and the other guests *were* at 2855 8th Avenue to visit him.

11. Mr. Boyd was arraigned in New York County Criminal Court on October 4, 2012 on the trespass offense charged in Police Officer Waring's perjurious complaint. Based on that complaint, the arraignment judge set bail.

12. Mr. Boyd could not afford to make bail. He spent approximately three weeks in jail at Rikers Island.

13. Mr. Boyd was subjected to nearly five months of proceedings in connection with his criminal case. He was required to make numerous appearances in court to defend himself against the false charges.

14. On February 21, 2013, the New York County District Attorney's Office dismissed all charges against Mr. Boyd.

15. Meanwhile, on February 1, 2013, twenty days before those false charges were dismissed, Mr. Boyd was again arrested without cause.

16. Upon information and belief, some of the officers who participated in Mr. Boyd's October 3, 2012 illegal arrest also participated in his February 1, 2013 illegal arrest.

17. On the afternoon of February 1, 2013, Mr. Boyd and his friend Damien Williams were at Mr. Williams's home at 301 W. 150th Street, New York, New York. Mr. Boyd and Mr. Williams exited the building and walked to the corner.

18. When they reached the corner, several officers, including Officer Jaysen Basnight, exited a patrol vehicle parked at the corner and, without explanation, instructed Mr. Boyd and Mr. Williams to stop.

19. The officers searched Mr. Boyd's pockets and found nothing. They then informed Mr. Boyd and Mr. Williams that they both had outstanding warrants. Mr. Boyd had not been arrested since the October 3, 2012 incident.

20. Without explaining why Mr. Boyd and Mr. Williams had been stopped in the first place, the officers arrested Mr. Boyd, explaining that the arrest was based on Mr. Boyd's fictitious warrant. The officers handcuffed Mr. Boyd, placed him in the patrol car, and transported him to the 32nd Precinct along with Mr. Williams.

21. At the precinct, the defendant officers forced Mr. Boyd to strip. He was taken to an unsecured area where two officers directed him to take off all of his clothes, including his underwear, and submit to intrusive visual cavity searches.

22. The officers found nothing illegal on Mr. Boyd. Nonetheless, they detained him at the precinct well into the evening. Hours after his baseless arrest, he was released with a summons for disorderly conduct signed by Officer Basnight.

23. On the summons, Officer Basnight falsely swore that Mr. Boyd "did cross street against traffic signal causing annoyance and alarm." Officer Basnight did not observe Mr. Boyd cross a street prior to his detention.

24. On April 5, 2013, the court dismissed the summons without Mr. Boyd even having to appear in court.

25. This complaint, arising from the unlawful acts of the defendant police officers, seeks compensatory and punitive damages, costs, disbursements, and

attorneys' fees pursuant to applicable state and federal civil rights law.

## THE PARTIES

26. Plaintiff Jahmeek Body is a citizen of the United States and resided in New York, New York at the time of the events giving rise to this complaint.

27. Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States and of the State of New York.

28. At all times relevant hereto, Defendant Police Officer Telly Waring, Shield #20352, was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of Defendant City and within the scope of his employment as such.

29. At all times relevant hereto, Defendant Police Officer Jaysen Basnight, Shield # 29694, was a police officer of the NYPD, acting in the capacity of agent, servant, and employee of Defendant City and within the scope of his employment as such.

30. Defendant Police Officers John Doe #1-10 were police officers of the NYPD who were present at 2855 8th Avenue on October 3, 2012 at the time of Mr. Boyd's arrest; were at the corner of W. 150th Street and 8th Avenue on February 1, 2013

5

at the time of Mr. Boyd's arrest; and/or participated in the search of Mr. Boyd at the 32nd Precinct on February 1, 2013. At all times relevant hereto, Defendant Police Officers John Doe #1-10 were acting in the capacity of agents, servants, and employees of Defendant City and within the scope of their employment as such.

31. At all times relevant hereto, Police Officer Waring, Police Officer Basnight, and Police Officers John Doe #1-10 (collectively the "Officer Defendants") were acting under the color of state law.

## JURISDICTION AND VENUE

32. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York state common law.

33. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

34. The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

35. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

*October 3, 2012 Incident*

36. At all times relevant hereto, Mr. Boyd's friend Mr. Richards lived in apartment 1C at 2855 8th Avenue. Posted in the lobby of Mr. Boyd's building was a sign prohibiting trespassing. The sign stated: "Tenants and Their Guests Only."

37. On October 3, 2012, Mr. Boyd was visiting Mr. Richards at Mr.

6

Richards's apartment. After spending some time with Mr. Richards in the apartment, Mr. Boyd left. Mr. Richards remained at home.

38. Not long after, Mr. Boyd returned to Mr. Richards's apartment, expecting to find him still at home. Mr. Boyd brought with him three additional friends: Maya Perry, Brianna Loveday, and Adam West. Ms. Perry, Ms. Loveday, and Mr. West were also Mr. Richards's friends.

39. The four guests entered the building at 2855 8th Avenue and knocked on the door of Mr. Boyd's apartment, which is located on the lobby level of the building. Mr. Boyd and the other guests waited for Mr. Richards to answer their knock. When he did not, they turned to leave the building.

40. As the guests were leaving the building, the Officer Defendants entered the lobby. The Officer Defendants asked Mr. Boyd and the other guests whether they lived in the building. They said that they did not but that they were visiting a friend who did.

41. Ignoring the guests' statements that they were visiting a resident of the building, and without explanation, the Officer Defendants ordered Mr. Boyd and the other three guests up against a wall. The Officer Defendants searched Mr. Boyd and handcuffed him. They also searched the other three guests and placed them under arrest.

42. Partway through this encounter, Mr. Richards entered the lobby of his building and saw his friends being arrested. The Officer Defendants asked Mr. Richards whether he knew the guests. Mr. Richards stated that he did.

43. The Officer Defendants then asked Mr. Richards whether the guests had come from Mr. Richards's house. Mr. Richards stated that they had.

7

44. The Officer Defendants asked Mr. Richards for his identification, which Mr. Richards provided. The identification confirmed that Mr. Richards lived at 2855 8th Avenue. After recording his identifying information, the Officer Defendants allowed Mr. Richards to continue on to his apartment.

45. However, the Officer Defendants did not release Mr. Richards's guests.

46. The Officer Defendants had confirmed that Mr. Richards was a tenant of the building. They had further confirmed that Mr. Boyd and the other three guests were Mr. Richards's friends and in the building to visit him. The Officer Defendants therefore knew that Mr. Boyd and the other three guests were not trespassing in violation of the warnings posted in the building's lobby. Nonetheless, the Officer Defendants proceeded with Mr. Boyd's arrest and the arrest of the other three guests.

47. The officers transported Mr. Boyd and the other three guests to the 32nd Precinct. Mr. Boyd spent the night in custody.

48. On the following day, October 4, 2012, Defendant Officer Waring swore out a criminal complaint against Mr. Boyd in New York County Criminal Court, charging Mr. Boyd with Criminal Trespass in the Third Degree in violation of N.Y. Penal Law § 140.10(a).

49. The criminal complaint signed by Defendant Officer Waring contains multiple misstatements of fact.

50. Defendant Officer Waring wrote in the complaint that he had observed Mr. Boyd in the backyard of 2855 8th Avenue on October 3, 2012.

51. That statement was false. Mr. Boyd was not in the backyard of

2855 8th Avenue at any time on October 3, 2012.

52. Defendant Officer Waring wrote in the complaint that, while he was speaking to Mr. Boyd and the other three guests in the lobby of 2855 8th Avenue, Mr. Richards entered the building. Defendant Officer Waring further wrote in the complaint that Richards "stated that he lived in the building in apartment 1C, but that the [guests] were not visiting him that day."

53. That statement was false. In fact, Mr. Richards told the Officer Defendants that Mr. Boyd and the other guests were his friends and had come from his apartment.

54. Without Defendant Officer Waring's false statements, the criminal complaint would not have established probable cause to prosecute Mr. Boyd for trespass.

55. Moreover, Defendant Officer Waring excluded from his complaint material facts, including Mr. Richards's true statements. Those facts established that Mr. Boyd was a guest at 2855 8th Avenue and, as such, was not guilty of trespass.

56. Mr. Boyd was arraigned in New York County Criminal Court on October 4, 2012 on the basis of Defendant Officer Waring's perjurious criminal complaint.

57. Mr. Boyd could not afford to post the bail set by the court and was transported to Rikers Island. Mr. Boyd was detained at Rikers Island for approximately 19 days.

58. Even after his release from Rikers Island, Mr. Boyd was forced to attend numerous court proceedings. The criminal case against him proceeded for nearly five months. During that time, Mr. Boyd was required to render himself at all times

subject to the orders and processes of the court.

59. On February 21, 2013, the proceedings terminated in Mr. Boyd's favor when the New York County District Attorney's Office dismissed all charges against him.

60. Mr. Boyd's false arrest and unlawful prosecution have caused him and/or continue to cause him a deprivation of his liberty, psychological pain and suffering, mental anguish, reputational injury, and other losses.

61. Within ninety days after the February 21, 2013 dismissal of all charges, a written notice of claim, sworn by Plaintiff, was served upon the City by personal delivery of notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

62. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

63. This action has been commenced within one year and ninety days after the dismissal of all charges against Mr. Boyd on February 21, 2013.

64. This action has been commenced within three years of Mr. Boyd's October 3, 2012 arrest.

*February 1, 2013 Incident*

65. At all times relevant hereto, Mr. Boyd's friend Mr. Williams lived at 301 W. 150th Street, located on the northwest corner of W. 150th Street and 8th Avenue, with a main entrance on W. 150th Street. Extending from the front entrance of the building was a ramp running eastward, parallel to the front of the building and terminating several yards from the northwest corner of W. 150th Street and 8th Avenue.

66. On February 1, 2013, at approximately 3:30 in the afternoon, Mr. Boyd and Mr. Williams exited Mr. Williams's building, proceeded down the ramp towards 8th Avenue, and continued walking to the corner. At no time did Mr. Boyd or Mr. Williams cross the street.

67. As they reached the corner, several of the Defendant Officers, including Officer Basnight, jumped out of a patrol car and, without explanation, ordered Mr. Boyd and Mr. Williams to stop. Mr. Boyd and Mr. Williams complied.

68. The Defendant Officers forcibly turned Mr. Boyd and Mr. Williams around and, from the back, pressed them up against vertical poles supporting scaffolding around Mr. Williams's building.

69. Still without explanation and without permission, the Defendant Officers patted down Mr. Boyd's clothing and reached inside his pockets. They did not find any weapons or contraband.

70. While Mr. Boyd and Mr. Williams were detained against the scaffolding, the Defendant Officers performed a warrant search. They discovered that Mr. Boyd had no outstanding warrants. However, they falsely told Mr. Boyd and Mr. Williams that there were warrants outstanding for both of their arrests.

71. The Defendant Officers placed Mr. Boyd under arrest with no probable cause that he had committed a crime. They handcuffed Mr. Boyd and transported him along with Mr. Williams to the 32nd Precinct.

72. After he arrived at the precinct, Mr. Boyd was taken by at least two of the Defendant Officers, including Officer Basnight, to an unsecured area in the back of the precinct. There, the Defendant Officers directed Mr. Boyd to remove his clothing.

73. Mr. Boyd protested, observing that the Defendant Officers had no reason to believe that there was anything illegal on his person. The Defendant Officers indeed lacked reasonable suspicion that Mr. Boyd possessed any contraband or weapons. Nonetheless, the Defendant Officers demanded that Mr. Boyd remove his clothing.

74. Mr. Boyd removed most of his clothing, leaving on his underwear. The Defendant Officers instructed Mr. Boyd to remove his underwear. Mr. Boyd complied.

75. Once Mr. Boyd was fully naked, the Defendant Officers instructed him to bend over and cough. One Defendant Officer stood in front of Mr. Boyd, and one behind. The two Defendant Officers performed visual searches of Mr. Boyd's anus and genitalia while he followed their instructions.

76. While Mr. Boyd stood fully naked in the precinct and complied with the Defendant Officers' instructions, other officers not conducting the search passed freely in and out of the area, further enhancing Mr. Boyd's exposure and embarrassment.

77. Mr. Boyd suffered and continues to suffer extreme frustration and embarrassment from the gravely degrading and humiliating treatment to which Officer Basnight and the other Defendant Officers subjected him.

78. The Defendant Officers found nothing illegal on Mr. Boyd. Nonetheless, they placed him in a cell and detained him well into the evening. Hours after arriving at the precinct, Mr. Boyd was released with a summons.

79. The summons charged Mr. Boyd with disorderly conduct on the false premise that Mr. Boyd "did cross street against traffic signal causing annoyance and alarm."

80. Officer Basnight signed the summons under penalty of perjury, swearing that he personally had observed the commission of the charged offense. That statement was false. Officer Basnight and the other Defendant Officers knew that they had not observed Mr. Boyd cross the street against the light.

81. The summons directed Mr. Boyd to appear on April 17, 2013, but on April 5, 2013, the summons was dismissed.

82. Mr. Boyd's false arrest, search, and detention have caused him and/or continue to cause him a deprivation of his liberty, psychological pain and suffering, mental anguish, reputational injury, and other losses.

83. This action has been commenced within three years of Mr. Boyd's February 1, 2013 arrest and search.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
(Against the Officer Defendants, Relating to the October 3, 2012 Incident)

84. The Officer Defendants falsely arrested Plaintiff, charging him with criminal trespass without probable cause.

85. On the basis of this false criminal charge, the Officer Defendants apprehended Plaintiff and forced him to spend a night in police custody.

86. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff were carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

87. At all relevant times, the Officer Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

88. Throughout this period, Plaintiff was unlawfully, wrongfully, and

unjustifiably held under arrest, deprived of his liberty, imprisoned, and falsely charged.

89. At all times, the unlawful, wrongful, and false arrest and imprisonment of Plaintiff was without basis and without probable or reasonable cause.

90. All of this occurred without any fault or provocation on the part of Plaintiff.

91. The Officer Defendants acted under pretense and color of state law and in their individual capacities and within the scope of their respective employment as NYPD officers. Said acts by the Officer Defendants were beyond the scope of their justification, without authority of law and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

92. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(Against the Officer Defendants, Relating to the October 3, 2012 Incident)

93. The Officer Defendants maliciously commenced criminal proceedings against Plaintiff.

94. The Officer Defendants charged Plaintiff falsely, maliciously, in bad faith, and without probable cause.

95. Throughout the criminal proceedings, Plaintiff was unlawfully, wrongfully, and unjustifiably deprived of his liberty, imprisoned, and forced to defend himself in criminal court.

96. All charges against Plaintiff were terminated in Plaintiff's favor.

97. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants, Relating to the October 3, 2012 Incident)

98. The Defendants maliciously commenced criminal proceedings against Plaintiff.

99. The Defendants charged Plaintiff with these charges falsely, maliciously, in bad faith, and without probable cause.

100. After proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

101. Defendants and their officers, agents, servants, and employees were responsible for the malicious prosecution of Plaintiff during this period. Defendant City, as employer of the Officer Defendants, is responsible for the wrongdoing under the doctrine of *respondeat superior*.

102. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
(Against the Officer Defendants, Relating to the February 1, 2013 Incident)

103. The Officer Defendants falsely arrested Plaintiff, charging him with disorderly conduct without probable cause.

104. On the basis of this false criminal charge, the Officer Defendants apprehended Plaintiff and forced him to spend hours in police custody.

105. By patting down Plaintiff's clothing and reaching into his pockets,

15

the Officer Defendants illegally searched Plaintiff at the time of his arrest without the requisite reasonable suspicion.

106. By requiring Plaintiff to remove his clothing and subjecting him to a visual body cavity search, the Officer Defendants again subjected Plaintiff to an illegal search without the requisite reasonable suspicion.

107. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, imprisonment, and searches of Plaintiff were carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

108. At all relevant times, the Officer Defendants acted forcibly in apprehending, arresting, imprisoning, and searching Plaintiff.

109. Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned, and searched.

110. At all times, the unlawful, wrongful, and false arrest, imprisonment, and searches of Plaintiff were without basis and without probable cause or reasonable suspicion.

111. All of this occurred without any fault or provocation on the part of Plaintiff.

112. The Officer Defendants acted under pretense and color of state law and in their individual capacities and within the scope of their respective employment as NYPD officers. Said acts by the Officer Defendants were beyond the scope of their justification, without authority of law and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by the United States Constitution.

113. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### FIFTH CAUSE OF ACTION
Negligent Hiring and Retention of Employment Services
(Against Defendant City)

114. Upon information and belief, Defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the injuries sustained by Plaintiff.

115. Upon information and belief, Defendant City, through the NYPD, owed a duty of care to Plaintiff because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that an injury to Plaintiff or to those in a like situation would result from the Officer Defendants' conduct.

116. Upon information and belief, the Officer Defendants were unfit and incompetent for their positions.

117. Upon information and belief, Defendant City's negligence in hiring and retaining the Officer Defendants proximately caused Plaintiff's injuries.

118. Upon information and belief, because of the Defendant City's negligent hiring and retention of the aforementioned Officer Defendants, Plaintiff incurred significant and lasting injury.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

(a) On the First, Second, and Fourth Claims for Relief against the Officer Defendants, compensatory and punitive damages in an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. § 1988;

(b) On the Third Claim for Relief against all Defendants, compensatory damages in an amount to be determined at trial, and punitive damages against the Officer Defendants in an amount to be determined at trial;

(c) On the Fifth Claim for Relief against Defendant City, compensatory damages in an amount to be determined at trial; and

(d) Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      February 10, 2014

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By: _____
Earl Ward
Hayley Horowitz
75 Rockefeller Plaza, 20th Floor
New York, New York 10019
(212) 763-5000
*Attorneys for Plaintiff*